UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

L.G.B., a minor, individually and    :
by and through her parents,           :
CHRISTOPHER AND GINNY BOBBY,          :
                                      :
And                                   :
                                      :
CHRISTOPHER AND GINNY BOBBY,          :
Individually and on behalf of         :
their daughter, L.G.B.,               : CIVIL ACTION NO. 2:13CV714
                                      :
            Plaintiffs,               :
                                      :
v.                                    :
                                      :
SCHOOL BOARD OF THE CITY OF           :
NORFOLK,                              :
                                      :
            Defendant.                :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This case is before the court on Defendant School Board of the City of Norfolk's ("SBCN" or the "Board") motion for attorneys' fees (ECF No. 40) as a prevailing defendant under the Individuals with Disabilities Education Act ("IDEA" or the "Act"). 20 U.S.C. § 1415(i)(3)(B)(i). The motion was referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure. (ECF No. 45). For the reasons outlined below, the undersigned RECOMMENDS that SBCN's motion for attorneys' fees be DENIED.

1

## I.  BACKGROUND

Plaintiff, L.G.B., is a student disabled by autism.[1]  During the 2012-2013 school year, SBCN and Plaintiffs, L.G.B. and her parents (collectively "Plaintiffs"), attempted to accommodate L.G.B.'s special education needs through the programs at Blair Middle School.  After failed attempts at agreement, SBCN recommended placement in a regional public school program for autistic students, provided by the Southeastern Cooperative Educational Programs ("SECEP") through a proposed individualized education program ("IEP"). The parents refused to consent to the IEP, and SBCN eventually filed for Due Process to enforce the plan over their objections.  An Independent Hearing Officer ("IHO") heard testimony over five days and upheld SBCN's proposed placement.

The hearing resulted in a voluminous record.  It consisted of: (i) the due process hearing transcripts containing 1,155 pages of testimony from thirteen witnesses, (ii) 2,169 pages of SBCN's exhibits, (iii) a thumb drive containing SBCN's copies of audio recordings of all relevant IEP meetings convened during the 2012-2013 school year, (iv) DVD video depicting L.G.B.'s conduct in the Blair classroom, (v) approximately 191 pages of Plaintiffs' exhibits, and (vi) Plaintiffs' CD recordings of

---

[1] The record is reviewed in detail in the Report & Recommendation on the merits (ECF No. 30), and is briefly summarized here for context.

2

three IEP meetings. The IHO memorialized his decision in a detailed 22-page opinion.

Plaintiffs appealed the IHO's finding by filing a complaint in this court pursuant to 20 U.S.C. § 1415, and both parties filed motions for summary judgment. (ECF Nos. 27, 28). The undersigned heard argument and recommended that Plaintiffs' motion be denied and SBCN's motion be granted. (ECF Nos. 33, 34). On July 7, 2014, the District Court adopted and approved the Report and Recommendation, granted SBCN's motion for summary judgment, and denied Plaintiffs' motion for summary judgment. (ECF No. 38). As the prevailing party, SBCN timely filed this motion for an award of attorneys' fees. Fed. R. Civ. P. 54(d).

## II. ANALYSIS

### A. Attorneys' Fees under the IDEA

As a general matter, "a litigant must pay its own attorneys' fees in the absence of a statutory or enforceable contractual provision allowing attorneys' fees to be awarded to a prevailing party." E.E.O.C. v. Propak Logistics, Inc., 746 F.3d 145, 151 (4th Cir. 2014). The IDEA grants courts discretion to award reasonable attorneys' fees as part of the costs for actions brought under 20 U.S.C. § 1415. 20 U.S.C. § 1415(i)(3)(B)(i). Relevant here, the court may award fees to:

> a prevailing party[2] who is a State educational agency
> or local educational agency against the attorney of a
> parent who files a complaint or subsequent cause of
> action that is frivolous, unreasonable, or without
> foundation, or against the attorney of a parent who
> continued to litigate after the litigation clearly
> became frivolous, unreasonable, or without foundation.[3]

Id. § 1415(i)(3)(B)(i)(II).

While few cases define the operative language in the statute, in order to be "frivolous, unreasonable, or without foundation," a cause of action must truly be "lacking in arguable merit" at the time it was filed. District of Columbia v. West, 699 F. Supp. 2d 273, 279 (D.D.C. 2010) (quoting Sullivan v. School Bd. Of Pinellas Cnty., 773 F.2d 1182, 1189 (11th Cir. 1985) (interpreting attorneys' fee provisions of Title VII and Section 1983)); see also R.P. ex rel. C.P. v. Prescott Unified Sch. Dist., 631 F.3d 1117, 1126 (9th Cir. 2011) ("And the IDEA's language granting fees to prevailing defendants is nearly identical to the standard the Supreme Court developed in Christiansburg Garment Co. v. EEOC, . . . which is now the

---

[2] Plaintiffs concede that SBCN is "a prevailing party." ECF No. 43, at 2.

[3] Congress added this section in 2004. See Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647; see also Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 303, (2006) ("The IDEA obviously does not seek to promote [its] goals at the expense of all other considerations, including fiscal considerations.") (holding that IDEA does not provide for awarding experts' fees to the prevailing party)).

standard for awarding fees to prevailing defendants in civil rights cases.").[4]

The court's focus must be on the merit of the case, not the outcome. See Christiansburg Garment Co., 434 U.S. at 422. "[I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Id. With those considerations, an award of attorneys' fees is a "conservative tool, to be used sparingly." Arnold v. Burger King Corp., 719 F.2d 63, 65 (4th Cir. 1983) (Title VII case)).

Finally, whether to award attorneys' fees is a question vested in the court's discretion. See, e.g., E.E.O.C. v. Great Steaks, Inc., 667 F.3d 510, 517 (4th Cir. 2012). As the Fourth Circuit has made clear in related statutory contexts, "[t]here is no set quantity of evidence separating claims that are frivolous, unreasonable, or groundless from those that are not." Id.

**B. SBCN's Argument**

SBCN argues that Plaintiffs' action filed in this court was frivolous, unreasonable, and without foundation because "there

---

[4] Compare 20 U.S.C. § 1415(i)(3)(B)(i)(II) (permitting award of fees if suit was "frivolous, unreasonable, or without foundation"), with Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978) (permitting award of fees if suit was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith").

was no factual basis in the administrative record for Plaintiffs' counsel to appeal on the grounds stated in the Complaint." (ECF No. 41, at 6.) Plaintiffs' counsel "knew or should have known, that there was no legal basis for making" the claims that they did. Id.

SBCN argues that Plaintiffs' counsel's unreasonableness in filing the complaint stemmed from their "willful ignorance of the record." (ECF No. 41, at 7.) This caused Plaintiffs' counsel to "continue[] to mischaracterize the Parents' actions and position in the IEP process." Id. Specifically, SBCN points out four claims made by Plaintiffs' counsel that it argues lacked foundation.

First, SBCN argues that Plaintiffs' counsel's claim that the parents were denied participation in the IEP process was frivolous. The brief argues Plaintiffs' counsel's factual claims were contradicted by the recorded minutes of the IEP meetings. In addition, Plaintiffs' counsel relied upon regulations relating only to private school placements, whereas SECEP, the proposed placement for L.G.B., was a public school.

Second, SBCN argues that Plaintiffs' counsel's claim that SBCN did not sufficiently evaluate L.G.B. in proposing its educational plan had no legal or evidentiary foundation. (ECF No. 41, at 8). The Board argues that Plaintiffs failed to present any evidence to contest the accuracy of, or conclusions

drawn from, the comprehensive data collected during the 2012-2013 school year. (<u>Id.</u> at 9.)

Third, SBCN argues that Plaintiffs' counsel knew, or should have known, that there was no legal or factual basis for claiming that the IEP could not be implemented as written. (ECF No. 41, at 10). "Because the administrative record established that the only thing preventing implementation of the IEP was the Parents' adamant and continuing refusal to allow SECEP to conduct an observation to make a classroom assignment, Plaintiffs' claim of IHO error on this basis was frivolous, unreasonable, and without foundation." (<u>Id.</u>) The Board argues that Plaintiffs presented no evidence in the due process hearing to support this claim made on appeal.

Finally, SBCN argues that Plaintiffs' counsel's claim that L.G.B. was denied a FAPE was based on an overstatement of the rule in <u>A.K. ex rel. J.K. v. Alexandria City School Board</u>, 484 F.3d 672 (4th Cir. 2007) and a "blatant mischaracterization" of the parents' position in the IEP process. (ECF No. 41, at 10). SBCN goes on to again distinguish <u>A.K.</u> from the present case. (<u>Id.</u> at 11-13).

SBCN seeks $33,800 in fees. It thoroughly articulated the basis for this figure based on the lodestar amount and <u>Johnson</u> factors. (ECF. No 41, at 15-18); <u>see J.P. ex rel. Peterson v. Cnty. Sch. Bd. Of Hanover Cnty.</u>, 641 F. Supp. 2d 499, 512 (E.D.

Va. 2009); <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974). The fees requested include only those expended in defending the parents' appeal of the IHO ruling, not those incurred in SBCN's successful prosecution of those proceedings.  In other words, SBCN seeks those fees it incurred after Plaintiffs continued to litigate beyond the due process hearing.

### C. Plaintiffs' Counsel's Argument

Plaintiffs were represented by attorneys from the disAbility Law Center of Virginia, a non-profit devoted to protecting the legal rights of disabled Virginians.  They insist that their action in this court was not frivolous, unreasonable, or without foundation. First, they argue that the appeal had sufficient merit to avoid an award of attorneys' fees to SBCN. Second, they warn of the chilling effect an award might have on other attorneys considering filing meritorious cases.  (ECF No. 43, at 3).

In support of their primary argument, Plaintiffs' counsel maintain that there were no disputes about the facts and only "questions of law remained unresolved" when they filed this appeal.  (ECF No. 43, at 7).  They argue that because they stipulated to the facts with SBCN and the case was resolved on

cross-motions for summary judgment, the appeal "turned entirely on questions of law."[5]

As a result, they argue, SBCN's allegation that Plaintiffs' counsel misstated facts in the record is contradicted. Id. Plaintiffs' counsel maintains that without the hindsight of this court's ruling, their argument based on A.K., among other arguments, was not frivolous, unreasonable, or without foundation.

Plaintiffs' counsel also cite the Board's alleged refusal to attempt mediation, and the opinions of other disability rights attorneys to justify their good faith pursuit of this action. (ECF No. 43, 13, 15.) Adrienne Volenik, a Clinical Professor of Law and Director of the Education Rights Clinic at the University of Richmond School of Law, and Jonathan Martinis, the Legal Director for Quality Trust for Individuals with Disabilities, both provided signed statements attesting to their assessment of the merit of Plaintiffs' claims. (ECF No. 43-1, 43-3).

---

[5] Additionally, Plaintiffs appear to ask the court to follow Prescott. (ECF No 43, at 3). There, the Ninth Circuit held that "so long as the plaintiffs present evidence that, if believed by the fact-finder, would entitle them to relief, the case is per se not frivolous and will not support an award of attorney's fees." 631 F.3d at 1126 (citing EEOC v. Bruno's Restaurant, 13 F.3d 285, 290 (1993). The court notes, however, that Plaintiffs offered no new evidence during the appeal in this court. (Scheduling Order Stipulation, ECF No. 24, at 2).

Ms. Volenik stated that she consulted with Plaintiffs' counsel about this case prior to their filing the appeal. (ECF No. 43-1). Ms. Volenik opined that, based on her understanding of then-existing law, it was not frivolous, unreasonable, or without foundation. Ms. Volenik states that she, herself, has withdrawn as counsel from at least two cases that parents sought to pursue despite their unreasonableness and lack of foundation.

Likewise, Mr. Martinis stated that he consulted with Plaintiffs' counsel in this matter. (ECF No. 43-3). He does not "believe that the positions taken by [Plaintiffs' counsel] were frivolous, unreasonable, or without foundation." (Id.). Plaintiffs' counsel also evidence their good faith by noting that they prepared thoroughly, even mooting the argument prior to appearing on the summary judgment motions. (ECF No. 43, at 15).

With respect to their second principal argument – the chilling effect – Plaintiffs' counsel argue that "[b]eing required to pay $38,200 would hurt its short-term efforts to help disabled persons in the state of Virginia and would severely limit its long-term strategy of defending students sued by school districts to ensure disabled students are receiving what they are entitled to under the IDEA." (ECF No. 43, at 19). They argue that granting an award of fees to SBCN would actually undermine Congressional intent by hindering the disability Law

10

Center of Virginia's effort to protect disabled children.   (ECF
No. 43, at 19).

   D. **Awards of attorney's fees to prevailing defendants under
   the IDEA are unusual.**

   Cases in which the court has granted attorneys' fees to the
prevailing governmental defendant have generally rested upon
egregious failures of counsel.[6]

   For example, in El Paso Indep. Sch. Dist. v. Berry, the
District Court granted, and the Court of Appeals affirmed, an
award of attorneys' fees based on Plaintiff's counsel's
"repeatedly prolonging litigation and stonewalling efforts to
conclude it to the detriment of his client."   400 F. App'x 947,
955 (5th Cir. 2010) (unpublished).   After continually advising
his client to reject settlement offers, counsel "continued to
resist the District's efforts to provide [the student] with a
FAPE almost a year after filing the due process complaint and
ten months after the District offered all requested relief."
Id.

   In Capital City Charter School v. Gambale, the court held
that the plaintiff's counsel had knowledge that several claims
in the complaint were false when drafted and filed.   __ F. Supp.
2d __, 13CV253, 2014 WL 1100366, at *11 (D.D.C Mar. 20, 2014).

---

[6] Neither party has cited, and the undersigned has been unable to locate any
case within the jurisdiction of the United States Court of Appeals for the
Fourth Circuit that awarded attorneys' fees to a prevailing school system
defendant under 20 U.S.C. § 1415(i)(3)(B)(i)(II).

The parents there made claims so far on the fringe of the IDEA that they were "frivolous, unreasonable, and without foundation ab initio." Id. at *13. The court described one false allegation of fact as "breath-taking." Id. at *11.

In Bridges Public Charter School v. Barrie, the plaintiffs alleged that the school failed to develop an appropriate IEP because it did not consult with the student's mother when the record evidence showed that she was, in fact, present for and participated in the IEP meetings, signed the IEPs, and never contacted the school to object to any provision of the IEP. 796 F. Supp. 2d 39, 47-48 (D.D.C. 2011); see also G.M. v. Saddleback Valley Sch. Dist., SACV 11-1449 DOC, 2012 WL 5947213, at *2 (C.D. Cal. Nov. 26, 2012) ("Mother's stonewalling of District's efforts to assess Student and legal positions on appeal show that the filing of and continued litigation of the Present Action was frivolous, unreasonable, and without foundation.").

In C.W. v. Capistrano Unified School District, the court held that the plaintiff's mother sought a remedy for a harm actually caused by her, "the remedy sought was well beyond any measure of relief the plaintiff could possibly obtain, [and] Mother adopted legal theories contrary to the plain language of the statute under which she sued." SACV 11-1157 DOC, 2012 WL 6093765, at *2 (C.D. Cal. Dec. 5, 2012).

Additionally, in several cases where fees have been awarded, defendants based their fees motion on the plaintiffs' claims in the administrative hearing. See, e.g., Gambale, 2014 WL 1100366, at *2; C.W. v. Capistrano Unified Sch. Dist., 2012 WL 6093765, at *1 (seeking fees for both the administrative proceeding and appeal); Barrie, 796 F. Supp. 2d at 42-43; Amherst Exempted Vill. Sch. Dist. Bd. of Educ. v. Calabrese, 1:07CV920, 2008 WL 2810244, at *8 (N.D. Ohio July 21, 2008). Moreover, in many of those cases, the IHO made a finding that evidenced the weakness of the claims at the administrative level. E.g., Gambale, 2014 WL 1100366, at *8 ("[T]he Hearing Officer found that the Parent had presented no testimony to support the allegations that completing college applications and taking a college tour were [the defendant's] responsibility . . . ." (emphasis added)).

On the other hand, where courts have declined to award attorneys' fees, the claims of plaintiffs' counsel have been less flagrantly wrong. See, e.g., D.C. v. Nahass, 699 F. Supp. 2d 175, 184-85 (D.D.C. 2010) (holding that plaintiffs' counsel still had grounds to believe the client was entitled to relief after some claims were mooted out); District of Columbia v. West, 699 F. Supp. 2d 273, 279-80 (D.D.C 2010).

In this case, despite the shortcomings in Plaintiffs' arguments, they were not frivolous, unreasonable or without

foundation. Although Plaintiffs' counsel in this case may have failed to fully investigate the portions of the record which contradicted their clients' position, this error and resulting legal arguments based on it do not rise to the level necessary for an award of fees. This conclusion alone is sufficient to end the analysis and support the court's exercise of discretion to deny fees.   However, the Board's claim for fees rests on a legitimate concern that counsels' advocacy in this case resulted in their ignoring relevant facts. Moreover, the Board asserts, counsels' narrow focus on a technical allegation of error resulted in their mischaracterizing their own clients' role in producing the defect.   This strategy may have prevented counsel from bringing about a negotiated resolution to the conflict because it minimized efforts undertaken by the Board, its employees and several other subject matter experts, to try to deliver educational services to L.G.B. in an environment suited to her limitations. Because the court is persuaded these issues did contribute to increasing the costs to all parties, and prolonging resolution for L.G.B. and her parents, and because this report may be subject to de novo review, a further explanation of the four specific deficiencies SBCN relies upon may be independently useful.

1.   **The record did not support the parents' claim that they were denied participation in the IEP process.**

The Board's first contention is that the parents' position regarding their participation in the IEP process was without support in the record.   As Plaintiffs' counsel observed, however, the Complaint did not allege a blanket denial of participation.   Indeed, to do so would have been frivolous.[7] Instead, they premised this portion of their argument on a narrow, but important, factual issue – whether the parents had been given sufficient information regarding the specific SECEP classrooms which might serve their daughter's needs. (Complaint, ECF No. 6,  ¶¶ 26, 29, 32, 35 and 41(a)).

While it is true that the Board may have overstated the parents' position on this point, it is also true that the record unambiguously demonstrates that, even on the narrow point, the Board never "withheld" information from the parents concerning the locations where their daughter would be educated.   In fact, the only reason for any ambiguity concerning their access to the classrooms identified by SECEP arose from the parents' refusal to cooperate with the final SECEP evaluation.   But even before the parents withdrew their cooperation, they had been provided

---

[7] The record included minutes and recordings of numerous meetings attended by one or both parents, and included hundreds of documents reflecting their communication with the Board about L.G.B.'s evaluation, progress and services to be provided.   (See e.g., ECF No. 11-1 at 2-7, index of 90 items submitted for the category of IEP documents between 2012-13).

detailed information regarding SECEP's capacities, and the availability of local classrooms under consideration by the Board. Plaintiffs' counsel overlooked or ignored this fact, and that error led to a misunderstanding of the parents' claim to have been denied information. At oral argument on the motion for summary judgment, the following exchange took place between the court and counsel for the Bobbys:

> Counsel:   One of the things that only really came to light upon this appeal is that the school had two locations in mind and they didn't share that with the Bobbys. In my conversations with the Bobbys, if they had that information, they said they probably would have agreed to -
>
> Court:   Are we talking about Churchland and Renaissance?
>
> Counsel:   I don't know, Your Honor, because we still don't have that information. In the school's answer, their paragraph 24, they admitted they didn't share. They had two placements in mind but they didn't share them because they thought that the Bobbys would say no. And IDEA is pretty clear that parents need to have all the information.
>
> Court:   Did you listen to the recordings of the IEP meetings?
>
> Counsel:   I've listened to some of them Your Honor, not all of them.

In fact, if counsel or her colleagues had completed a detailed review of the record, they would have understood that both Renaissance and Churchland were specific SECEP facilities less than 10 miles from L.G.B.'s residence,

which were discussed by members of the IEP team with Mrs. Bobby long before the IEP was presented. (MDR Minutes, ECF No. 11-1, at 21-22). This was documented in the minutes of the IEP meetings (ECF No. 11-1, at 25), as well as the audio recordings e.g., (ECF No. 21, Tape of Feb. 22 IEP meeting at 1 hr. 16 min. to 2 hr. 11 min.). In addition, an email in the record from the SECEP ASP director specifically referenced a SECEP classroom in Portsmouth, which the parties understood was the Churchland classroom. (ECF No. 10-5, at 55-56). Finally, there was extensive testimony from multiple witnesses at the due process hearing identifying these two locations as the most likely options for a SECEP placement.

In response to this argument, counsel has repeatedly cited paragraph 24 of SBCN's Answer. But this pleading does not "admit" the Board didn't share this information, as counsel suggests. Instead, it merely responds to Plaintiffs' allegations that SBCN could not specify which single classroom was appropriate, by correctly stating that the list of classrooms had been narrowed to two, but neither was identified in the IEP because the parents had revoked consent and withdrawn their cooperation. This is exactly what the record reveals.

Despite these obvious inconsistencies between counsel's representations (that the issue "came to light upon this appeal") and the written record underlying summary judgment, the court does not feel the Bobbys' underlying claim on this point was frivolous, unreasonable or without foundation. The participation issue was always a secondary point and the Board was required to acknowledge, as the Bobbys affirmatively pled, that a final SECEP classroom placement had not been determined. As a result, despite having identified the two classrooms, neither was included in the IEP. The thrust of the parents' argument on appeal was not a complete absence of information concerning SECEP, but rather their position that the Board was required to identify in the written IEP document, a specific classroom where services would be provided. Although this court disagreed with that interpretation on the facts presented, it is similar to the rule announced in A.K.

2.  **The parents' counsel introduced no evidence that SECEP would be unable to meet L.G.B.'s educational needs.**

The second point of disagreement relates to the parents' contention that SBCN failed to adequately evaluate L.G.B. prior to recommending a SECEP placement.  Again, the parties' dispute

turned on a narrow issue important to the parents' legal argument. Nevertheless, it bears mention that counsel introduced no evidence to counter a record which overwhelmingly supported the Board's recommendation that L.G.B. be educated in SECEP's Autism Spectrum Program. In addition to testimony from at least six educators who were closely familiar with L.G.B.'s educational progress in the Norfolk schools to date (R&R, ECF No. 34 at 23-24), the record also included testimony from SECEP's ASP director, Greg Jacob, as well as a totally independent third party observation by an autism specialist with ODU's Training and Technical Assistance Center. All of these experts identified the services necessary to support L.G.B., and they matched those available at SECEP. Against this overwhelming weight of the evidence, the parents and their counsel did not offer a single expert or lay opinion that SECEP would be unable to meet their daughter's needs. Nor did they make any effort to argue that her current placement or any alternative placement would be superior. Over five days of testimony, the IHO heard nothing which would suggest that the Board failed to evaluate L.G.B.'s needs or that the SECEP placement would not deliver a FAPE.

Despite the lopsided weight of the evidence, parents' counsel maintained that their position was not without foundation. And on the narrow ground asserted, they are

correct. Though it may have been overstated in their brief, the parents' point of disagreement involved only the last step in the SECEP process, a classroom specific evaluation during which the student would be observed for the specific purpose of selecting which of the locally available classrooms would best suit her needs. As is also well established in the record, this final observation never took place only because the parents refused to permit it. As a result, SECEP's director, Greg Jacob, testified before the IHO that he was unable to state exactly which classroom L.G.B. would be placed in because he wanted to conclude this observation first. Because this evaluation did not occur, it was not legally frivolous or groundless to press this point on appeal.

> 3.  **Counsels' claim that the IEP could not be implemented as written was also thoroughly addressed by the IHO.**

This disputed contention formed the heart of the parents' appeal.  They argued that by specifying that L.G.B. would receive specialized educational services at SECEP, without further specifying the exact classroom within SECEP's programs where the services would be provided, the Board's IEP failed to offer a FAPE. As presented, these facts are analogous to those addressed by the Fourth Circuit in A.K.  484 F.3d at 678-81. The court's recommendation on the merits of plaintiff's claim discussed the A.K. case in detail. (R&R, ECF No. 34, at 18-21).

As relevant here, it is sufficient to note that the Fourth Circuit reversed a district court order affirming an IEP which had specified that educational services would be delivered in an unidentified private day school setting. The similarity to the facts here appears to have been the centerpiece of counsels' advocacy throughout the due process proceedings and their appeal.

Unfortunately, the surface similarity between A.K. and this case appears to have blinded counsel to clear differences between the two. Most important from the standpoint of the IDEA, the child in A.K. was being removed from an environment which all parties agreed met his needs, in order to be educated in a new (less costly) environment which the parents and their experts concluded would not meet his needs. By contrast here, all agreed that L.G.B.'s existing placement did not meet her needs, and no evidence (from the parents or any expert) suggested that SECEP could not meet her needs. While these facts might not have been plain to counsel when the Board began presenting its case to the IHO, they were clearly plain when it finished. At the conclusion of that hearing, the IHO noted that the final classroom-specific observation had not yet occurred as a result of the parents withdrawing their consent. Nevertheless, based on the five days of testimony and exhibits presented he found

> Mr. Jacobs was prepared to observe the Student and had determined that two (2) classrooms were available that he determined appropriate for the Student. In withdrawing their consent, the parents made it clear that they simply did not want the Student to go to SECEP, but offered no basis for this position, but made it clear they wanted Blair to develop a program specifically for the Student. . . . Based on the testimony of Ms. Szykuc and Mr. Jacobs, such a program exists at SECEP.

(IHO Opinion, ECF No. 1-1, at 19-20).

Importantly, despite being invited to present evidence in this court, the parents declined. As a result, the record is still devoid of any testimony, expert or otherwise, suggesting SECEP would not deliver a FAPE.

But the parents and their counsel are correct that an IEP must consider the location where educational services are to be provided. Because they revoked their consent to evaluation, the parents succeeded in preventing the IEP from including the exact SECEP classroom where services could be provided. Thus, it was not legally frivolous for counsel to assert this alleged error on appeal. In light of the IHO's findings, however, counsels' persistence in pressing the significance of the self-inflicted defect stretches the limits of zealous advocacy. But given Greg Jacob's testimony that a final placement evaluation prevented him from identifying the exact classroom where L.G.B. would best fit, the court is unable to say that parents' position was unreasonable or lacked foundation at the time it was filed.

22

4.   Though not groundless, counsels' challenge to the
     IEP's offer of a FAPE ignored the central purpose of
     IDEA.

The Board most strenuously contests the parents' argument
that L.G.B.'s IEP failed to offer a FAPE.   Although the Board
recognized the parents' legal position was premised on the
Fourth Circuit's recent decision in A.K., its brief offers nine
different reasons why the facts here were materially different.
Indeed, the court articulated many of these differences in its
merits review.   But even accepting all of them as correct, they
do not explicitly contradict the parents' counsels' claims in
this action that the IEP's failure to identify a classroom
location within SECEP brought the case within that recent Fourth
Circuit precedent.

Nevertheless, as the court previously wrote, an IEP is
primarily directed at defining the specialized educational
services provided to a disabled child.   It must outline her
"then current educational status, establish annual goals, and
detail the special educational services and other aids that the
child will be provided."   A.K., 484 F.3d at 675.   It also must
be "reasonably calculated to enable the child to receive
educational benefits."   Bd. of Educ. of Hendrick Hudson Cen. Sch.
Dist., Westchester Cnty v. Rowley, 458 U.S. 176, 207 (1982). The
"touchstone" of the educational placement which the IEP must

primarily address "is not the location to which the student is assigned, but rather the environment in which educational services are [to be] provided." A.W. ex rel. Wilson v. Fairfax Cnty. Sch. Bd., 372 F.3d 674, 682 (4th Cir. 2004).

If counsels' actions in litigating this appeal fell short, it is not because they advanced legally frivolous or groundless positions. The narrow, technical errors they pressed were certainly debatable under the language of A.K. and the regulations implementing the Act. 20 U.S.C. § 1414(a)(1)(A)(i)(VII); 34 C.F.R. § 300.116(b)(3) (requiring child to be educated "as close as possible to the child's home"). But the record they amassed did nothing to further the purpose of the Act which is to provide L.G.B. with "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." Rowley, 458 U.S. at 203. Indeed, from the evidence presented, counsel suggested no deficiencies in the personalized instruction designed for L.G.B., nor did they propose any superior alternative.

In addition to defending their litigation strategy, counsel rely on their status as a nonprofit charged with protecting the rights of disabled children. Their opposition brief and its exhibits attempt to demonstrate both their diligence and sincerity in pursuing these claims. Specifically, the brief and

24

affidavits from three non-appearing counsel describe extensive review of the record and the pleadings, which included a mock oral argument involving seven disability rights attorneys, none of whom apparently raised any doubt concerning the legitimacy of plaintiffs' filings.  While these exhibits do help establish counsels' subjective good faith in pursuing the claims, they raise a question concerning the objective reasonableness of doing so.  If counsels' stated purpose is to advocate for quality services for disabled children, and the IDEA exists to ensure that free and appropriate public education is among those services, why did none of these specially-trained advocates express any concern about the total absence of evidence suggesting that SECEP could not meet this child's needs?

Ultimately, as plaintiffs' counsel argue, the Bobbys had a legal right to pursue this appeal, and the similarity between this case and the facts of A.K. gave them a non-frivolous basis to do so.  But the Board was equally justified in raising the various substantive deficiencies reviewed in this report.

In the absence of any evidence that SECEP could not meet their daughter's needs, or that another program could meet them in a less restrictive setting, plaintiffs' defense of the Board's Due Process claim and the appeal in this case does not seem to have furthered plaintiffs' counsels' stated mission, or the purpose of the Act.  Indeed, even had they succeeded in

overturning the IHO's decision, it is impossible to see how it would have changed the outcome given the complete absence of any evidence that an alternative placement would be superior or even equal to the services already described. At most, the case merely prevented the Board from taking concrete steps to improve L.G.B.'s admittedly inadequate placement. Moreover, the decision to pursue this appeal beyond the due process hearing likely diverted resources from other matters and did more to harm to that mission than the modest and entirely reasonable attorney's fee award SBCN seeks against it. Nevertheless, because the court is unable to conclude that their claims were frivolous, unreasonable or without foundation, the undersigned will not recommend an award of fees, which would likely compound the harm.

### III. RECOMMENDATION

For the foregoing reasons, the undersigned recommends the court DENY defendant's request for attorney's fees under 20 U.S.C. § 1415(I)(3)(b)(i).

### IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of

mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.   A district judge shall make a _de novo_ determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of the right to appeal from a judgment of this court based on such findings and recommendations.   Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

                                        /s/
                              _____
                              Douglas E. Miller
                              United States Magistrate Judge
                              _____
                              DOUGLAS E. MILLER
                              UNITED STATES MAGISTRATE JUDGE


Norfolk, Virginia

September 16, 2014